[No. 8913.   Department Two.   April 5, 1911.]

THE STATE OF WASHINGTON, *Appellant*, v. MASAJI
NAKASHIMA, *Respondent*.[1]

MARRIAGE—RESTRICTIONS—STATUTES—REPEAL.  Rem. & Bal. Code, § 7151, prohibiting marriage between persons nearer of kin than second cousins, was not impliedly repealed by Rem. & Bal. Code, § 2455, defining incest, or by Rem. & Bal. Code, §§ 7152, 7153, 7164, 7165, relating to and prohibiting marriages in certain other specified cases.

INCEST—INFORMATION—NEGATIVING DEFENSES—MARRIAGE.  Upon a prosecution for incest between first cousins, the fact of a lawful marriage between the parties, if a defense, is to be affirmatively pleaded, and need not be negatived in an information stating every essential element of the crime as defined by Rem. & Bal. Code, § 2455.

[1]Reported in 114 Pac. 894.

Appeal from a judgment of the superior court for King county, Ronald, J., entered February 11, 1910, upon sustaining an objection to the introduction of evidence, dismissing a prosecution for incest. Reversed.

*George F. Vanderveer* and *J. L. Finch,* for appellant.

*Burkey, O'Brien & Burkey,* for respondent.

CROW, J.—This is an appeal by the state of Washington from a judgment sustaining an objection to the introduction of evidence, and dismissing a criminal action.

The controlling question is the sufficiency of the information, the charging portion of which reads as follows:

"He, the said Masaji Nakashima, a male person, and she, said Tama Kawamura, a female person, in the county of King, state of Washington, on the 20th day of November, 1909, being then and there first cousins computing by the rules of the civil law, did then and there wilfully, unlawfully and feloniously have sexual intercourse together."

The state elected to first try the respondent Masaji Nakashima who, after the jury had been impaneled, objected to the introduction of any evidence, contending that the information did not charge any crime, it having failed to negative a marriage between the defendants. Rem. & Bal. Code, § 2455, reads as follows:

"Whenever any male and female persons, nearer of kin to each other than second cousins, computing by the rules of the civil law, whether of the half or the whole blood, shall have sexual intercourse together, both shall be guilty of incest and punished by imprisonment in the state penitentiary for not more than ten years."

Marriages in this state are prohibited between parties nearer of kin to each other than second cousins, either of the whole or half blood, computing by the rules of the civil law. Rem. & Bal. Code, § 7151. This court, in *Johnson v. Johnson,* 57 Wash. 89, 106 Pac. 500, held void a marriage between first cousins domiciled in this state, who for the

purpose of avoiding the law of this state had visited a foreign jurisdiction where first cousins could lawfully marry, had there contracted the relation, and had immediately returned to this state to live as husband and wife. Mr. Bishop defines incest as follows:

"Incest, where statutes have not modified its meaning, is sexual commerce, either habitual or in a single instance, and either under a form of marriage or without it, between two persons too nearly related in consanguinity or affinity to be entitled to intermarry." Bishop, Stat. Crimes (3d ed.), § 727.

See, also, 22 Cyc. 43.

Our statute, § 2455, *supra*, in defining incest, makes no distinction between persons who claim to have been lawfully married, or to have gone through the form of a marriage ceremony, and those who are unmarried. It is suggested in respondent's brief that § 7151, Rem. & Bal. Code, *supra*, prohibiting first cousins from marrying in this state, has by implication been repealed and superseded by § 2455, *supra*, the same being § 203 of the criminal code of 1909 (Laws 1909, p. 950), defining incest; and by chapter 16, Laws of 1909, page 53, Extraordinary Session (Rem. & Bal. Code, §§7152, 7153, 7164, 7165), relating to and prohibiting marriages in certain cases. This contention is without merit. There is nothing in the act last above mentioned indicating any intention of the legislature to legalize marriages between parties nearer of kin than second cousins. Respondent's counsel in their brief thus state their contention:

"We will simply state that the position of the trial court was, and that of respondent is, that, viewing as a whole the law applicable to the situation, the legislature did not intend to make criminal, intercourse between persons who, at the time, are legal husband and wife and recognized as such by the laws of this state, and hence, such persons, living in the married relation, are guilty of no offense, even if first cousins, and that to charge one with incest in the language of the particular statute is insufficient without stating therein also the facts showing the accused to belong to the class

against which the statute is directed, viz., persons not lawful husband and wife. It is respondent's contention that the statute in question should be construed as containing an exception in favor of persons who are lawful husband and wife, and, so construing it, the exception should be negatived in the information."

Respondent calls attention to the fact that, in many foreign jurisdictions, including some of the American states, legal marriages may be contracted between first cousins, then domiciled in such jurisdictions; and contends that if thereafter they should become citizens of this state, they would be entitled, under the laws of comity, to be here regarded as legally married.

In *State v. Fenn*, 47 Wash. 561, 92 Pac. 417, 17 L. R. A. (N. S.) 800, we said:

"In support of its appeal the state relies upon the two general propositions that a marriage, valid where contracted, is valid everywhere, and that statutes declaring a second marriage unlawful, pending the time for appeal from divorce proceedings and imposing a penalty for their violation, are penal in their nature and have no extraterritorial effect. The general doctrine that a marriage valid where contracted is valid everywhere, has so often been declared by the courts and reiterated by text writers that it has become a maxim of the law. But there are exceptions to the rule as well established as the rule itself, viz: (1) incestuous and polygamous marriages prohibited by natural law; and (2) marriages prohibited by positive law."

Relative to the first exception, the question arises, what would be an incestuous marriage prohibited by natural law. Respondent, citing 1 Bishop, Marriage & Divorce (5th ed.), § 377, and *Pennegar v. State*, 87 Tenn. 244, 10 S. W. 305, 10 Am. St. 648, 2 L. R. A. 703, contends that incestuous marriages prohibited by the natural law are confined to marriages between parties related in a direct lineal line of consanguinity, and in the collateral line between brothers and sisters. He argues that marriages between first cousins are not incestuous under any prohibition of natural law; that

they do not come within the exception mentioned, and that such marriages, if contracted where lawful, between citizens within their own domicile, would be valid everywhere. Even though marriages contracted between first cousins where valid should be held valid everywhere, it is nevertheless apparent that there might be other marriages, contracted in foreign jurisdictions between persons of much nearer degree of kindred, so incestuous as to be prohibited by the natural law, which under the authority of *Johnson v. Johnson, supra,* would certainly render them void in this jurisdiction. On a charge of incest here preferred against such persons, it would be absurd to hold that an information which alleged their consanguinity, but failed to negative their marriage, would be insufficient. Yet any allegation necessary to charge cousins with incest would likewise be necessary to charge other defendants much more closely related. The same rule of pleading should prevail in each case, as our statute in defining incest makes no distinction between first cousins and other offenders. Assuming that first cousins, citizens of, or domiciled in, another jurisdiction, who legally marry there, could afterwards continue their relations in this state and not be guilty of incest, we think the fact of their marriage, if material at all, should be here relied upon and pleaded as an affirmative defense to an information charging incest, and that no allegation would have to be incorporated in the information to negative marriage. Respondent cites and relies upon the following rule of criminal pleading announced in 10 Ency. Plead. & Prac., at page 336:

"When there is a possibility that a lawful marriage may have been contracted between the parties—as in the case of first cousins, who are prohibited from marrying in some states but not in others, or where a relationship not formerly included within the prohibited degrees of consanguinity has been added by statute—an indictment against them should allege that they are not lawfully man and wife."

It will be observed from the foot note that *State v. Fritts,* 48 Ark. 66, 2 S. W. 256, is cited in support of the text, and

that reference is also made to *State v. Brown*, 47 Ohio St. 102, 23 N. E. 747, 21 Am. St. 790, which announces the contrary rule. After a careful examination of each of these cases, we feel constrained to approve and adopt the reasoning of the Ohio case. There the defendant was charged with incest. The indictment, however, failed to allege that the parties concerned were not husband and wife. A motion to quash by reason of such omission was interposed and overruled. The court, in passing upon the sufficiency of the pleading, said:

"By referring to the statute, section 7019, it will be observed that it contains no exception in favor of parties who are intermarried; the language is general, and comprehends them as well as the unmarried. Upon what principle, then, can an exception be engrafted in this section by judicial construction? We know of none. By the law of England the intermarriage of the parties did not render the connection any less incestuous. *Blackmore v. Brider*, 2 Phillimore 359; *Woods v. Woods*, 2 Curt. Ecc. 516. Bishop defines it as follows: 'Incest, where statutes have not modified its meaning, is sexual commerce, either habitual or in a single instance, and either under a form of marriage or without it, between persons too nearly related in consanguinity or affinity to be entitled to intermarry.' Bish. St. Cr. § 727. The act is little, if any, less repulsive to a correct sense of decency, and no less a violation of sound public policy, because it is perpetrated by persons living together publicly under the form of marriage, than if done by them clandestinely, and occasionally only. We hold, therefore, that by § 7019, Rev. Stats., sexual commerce, as between persons nearer of kin than cousins, is prohibited, whether they have gone through the form of intermarriage or not; nor is it material that the marriage was celebrated in a country where it was valid, for we are not bound, upon principles of comity, to permit persons to violate our criminal laws, adopted in the interest of decency and good morals, and based on principles of sound public policy, because they have assumed, in another state or country where it was lawful, the relation which led to the acts prohibited by our laws."

Our statute defining incest is simple, clear, and concise.

The information charging the respondent was drawn in exact compliance with its terms, and stated every essential element of the crime. If there in fact existed between the defendants a marriage relation contracted in a foreign jurisdiction, which would have to be regarded as legal here and which would relieve them from the crime charged, such marriage relation should be pleaded and proven by them as a defense, and need not be negatived by the information.

The judgment is reversed.

DUNBAR, C. J., CHADWICK, and MORRIS, JJ., concur.