## LEONARD WOOD v. STATE.

No. A-9915.  Sept. 3, 1941.

(116 P. 2d 734.)

348

Leon J. York, of Stillwater, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen and Owen Watts, Asst. Attys. Gen., and David P. Hervey, Co. Atty., of Stillwater, for the State.

BAREFOOT, P. J.  Defendant, Leonard Wood, was charged in the district court of Payne county with the crime of incest; was tried, convicted and sentenced by the court to serve a term of seven and one-half years in the penitentiary, and has appealed.

Defendant was also charged in 72 Okla. Cr. 364, 116 P. 2d 728, with the crime of rape in the first degree, was tried, convicted and sentenced to serve a term of five years in the penitentiary, and has appealed.  These cases, by agreement of counsel and order of the court, have been consolidated and considered together.  Defendant was unable to give bond pending appeal and is now confined in the penitentiary at McAlester, and for this reason the cases have been advanced and decision rendered at this time. The facts are very similar in each of the cases, only based upon different acts and at different times.  Opinions will be prepared in both cases, but a discussion of the evidence will be had only in this case.

Defendant was charged with the crime of incest.  The date relied upon in the information was Saturday, Decem-

ber 30, 1939. It involved defendant's daughter, Leona Wood, who was 17 years of age at the time of the trial on the 18th of March, 1940. Her testimony was that her father, the defendant, had been intimate with her over a period of three and one-half years, or since she was past 13 years of age. She testified that on numerous occasions defendant had intercourse with her. In most of these instances she testified that force was used and that he slapped her, pulled her hair, and upon one occasion struck her and knocked her unconscious. She exhibited a large lump on her breast which she stated was caused by a blow by defendant upon one of these occasions. While the evidence is shocking and revolting, it is clear and was heard by a jury who no doubt gave every consideration to the same and every consideration to the defendant, and rendered a verdict of guilty, which, after stating that they were unable to agree upon the punishment, added to their verdict the notation, "We recommend leniency." This notation was, as has been often held by this court, not binding upon the court, but in no way should prejudice the rights of the defendant. Estes v. State, 35 Okla. Cr. 335, 250 P. 809; Presnell v. State, 71 Okla. Cr. 162, 109 P. 2d 834; Severn v. State, 72 Okla. Cr. 141, 114 P. 2d 181; Albrecht v. State, 72 Okla. Cr. 270, 115 P. 2d 274.

The court sentenced the defendant to seven and one-half years in the penitentiary. The maximum punishment under the law was ten years in the penitentiary.

The first and main contention of defendant for reversal of this case is that the conviction is not sustained by the evidence, and that the court erred in refusing to sustain a demurrer to the evidence and advising the jury to return a verdict of not guilty, it being his contention that the charges were framed by his wife and daughter

and were untrue. This requires a brief examination of the evidence.

Prosecuting witness Leona Wood testified that about the time she entered junior high school and when she was past 13 years of age her father began a course of conduct, first by coming to her bed and being familiar with her, and he explained to her that this conduct was right and that it was her duty to submit to this. That at this time she did not know it was wrong and that she did not know how children were born, but thought they were brought by the stork. She did not tell her mother, who was at home during all of this time. She afterwards went to church and Sunday school and learned it was very wrong. This was about two years later, but that her father explained to her that her mother was sick and it was her duty to consent. That she did not tell her mother for the reason that he had many times threatened to kill her and her mother and the whole family if she ever told. She kept company with a young man and she told him about it two years prior to the time she told it to the county attorney and these charges were filed. She also told a neighboring lady a short time before the charges were filed, but did not tell her mother until just before the filing of the charges for the reasons above stated. She had also testified to threats by defendant to kill her boy friend if she ever told him, and this young man testified that it was for fear that he would kill Leona that caused him not to tell it. The evidence of the prosecutrix dealt especially with four different occasions when she claimed the acts of sexual intercourse occurred. First, on Saturday, December 30, 1939, this being the act relied upon in the charge in this case; second, on Saturday, December 23, 1939; third, on Mother's Day, in May, 1939; fourth, on Sunday following July 4, 1939. There were other occasions, but these are the dates of the main acts about which evidence was given.

The assault on the 30th of December, 1939, occurred on Saturday afternoon at home when she and her father were there alone. Her mother had gone to the doctor's office and her little sister had been given money by the father to go to a show. They left about 2:30 and did not return until about 5 p. m. She also recalled an assault after that time and on January 13, 1940. The assault on December 23, 1939, also took place at home and was consummated after pulling her hair and slapping her and forcing her to have intercourse with him. The assault on July 23, 1939, occurred after he had taken her mother to Shawnee to attend the funeral of her mother. It was after his return from Shawnee and when no one was there but her. She testified two acts of intercourse occurred that day. Her younger sister was visiting a girl friend and was not home when he returned, but was there at night, but he sent her into another room and closed the door.

The assault on the Sunday following July 4, 1939, occurred at her home when she and her father returned from the Cushing Country Club about 6:30 p. m. He had been playing golf and they returned to the home with the father and mother of her boy friend. She had a date with him for 6:30, and he made her call him over the phone and postpone the date until later in the evening.

The assault on Mother's Day in May, 1939, occurred while her mother was visiting her sister at Hugo. Her father had been planning to make the trip, but made an excuse that he was sick and stayed at home. He went to Hugo the following day.

After testifying to these specific dates and occurrences she stated:

"Q. How long has this course of conduct been carried on? A. Ever since in May when I was 13. Q. What year was that? A. 1935, I believe. Q. Has he acted about

the same way as you have described? A. Yes, sir, all the time, it is the same manner. Q. Have you ever discussed this matter with your father? A. Yes, sir, he threatened me so many times and I tried to have talks with him. Q. Did he give you any explanation as to why he was doing it? A. Yes, sir, he said all daughters had to do it, that this was part of growing up, and I was so young I didn't know. Q. When did he tell you that? A. When he first started, he said that was part of growing up. After I had my first menstrual period, that he said that was part of it. I wasn't supposed to talk to anyone, and all daughters had to do it, and I would find out some day that they was all doing it, but not to say anything about it now. Q. Did you discuss it with him after that? A. Yes, sir, after I begun to see it wasn't right. Q. When was that? A. About a year ago, and he says, 'Your mother was operated on, and you have to take her place,' and not to mention it to her because if she knew she was in that state of condition she would lose her mind, and I didn't know what to do. Q. Has he ever struck you when you refused to submit to him? A. Yes, sir, Q. When was that? A. About the summer of 1938, he struck me and gave me a large lump on that breast. Q. Where was that? A. On this left breast down low, there. Q. Is it still there? A. Yes, sir. Q. Did he ever strike you any other time? A. He gave me a black eye,, and several times he completely knocked me out. Q. When did he do that? A. Sometimes he would choke me until I would get faint and then hit me. Q. Would he violate you when he would knock you out? A. Yes, sir. Q. Has anybody else ever seen these attacks take place? A. Not the real attacks, but my sister has seen him get in bed with me. By Mr. York: Object to that. By the Court: Overruled. By Mr. York: Exception. A. And she knows I have struggled to get out and he usually sent her out."

It is contended by defendant that the court erred in refusing to sustain the demurrer to the information. The information contained this allegation:

"* * * on the 30th day of December, 1939, Leonard Wood, then and there being did then and there willfully, unlawfully and feloniously have sexual intercourse with, and carnally know one Leona Wood, a female child, she, the said Leona Wood, being then and there the daughter of the said Leonard Wood, contrary to the form of the statute", etc.

It is stated in defendant's brief:

"The information is fatally defective in that it fails to set out the manner and allege the facts in which said section was violated. It is not framed in the language of the statutes and does not designate whether the acts of sexual intercourse transpired as a result of an incestuous marriage between the parties, whether it was an act of adultery, or an act of fornication. The defendant could not have been prepared for trial unless these facts were clearly set forth in the information, in order that he might know what proof he must meet at the trial of the case."

The statute upon which this information is based is Okla. Stats. 1931, sec. 2238, O. S. A. title 21, sec. 885, which is as follows:

"Persons who, being within the degrees of consanguinity within which marriages are by the laws of the state declared incestuous and void, intermarry with each other, to commit adultery or fornication with each other, are punishable by imprisonment in the penitentiary not exceeding ten years."

This statute may be violated by one of three ways. First, where parties within the prohibited degree of kinship intermarry; second, where parties within the prohibited degrees of kinship commit adultery with each other; and third, where parties within the prohibited degrees of kinship commit fornication with each other. Signs v. State, 35 Okla. Cr. 340, 250 P. 938.

Under the information here considered the charge was under the second section. Under our practice an indict-

ment or information is sufficient as against a general demurrer if it substantially follows the language of the statute and clearly states the facts so that the party charged may know the crime with which he stands charged. The information in this case does that. It might have been more elaborately drawn, but it sets out (a) that defendant had intercourse with Leona Wood,. (b) that she was a female, (c) that she was the daughter of defendant, and (d) the date when the act was committed. These facts certainly inform defendant of the charge which he was called upon to meet. We do not think that defendant could be successfully put on trial for another crime growing out of the same offense and on the same date, as argued by defendant. We do not think it was necessary to allege that defendant was a married man and that prosecutrix was an unmarried person. While the authorities are not harmonious upon this proposition, the Supreme Court of Arkansas holds that it is necessary. Martin v. State, 58 Ark. 3, 22 S. W. 840; State v. Fritts, 48 Ark. 66, 2 S. W. 256. The great weight of authority is that the allegations of similar import to that used in the information in this case are sufficient. 31 Corpus Juris 379, section 20; 27 Am. Jur. 294, section 12; People v. Cease, 80 Mich. 576, 45 N. W. 585; State v. Nakashima, 62 Wash. 686, 114 P. 894, Ann. Cas. 1912D, 220; State v. Brown, 47 Ohio St. 102, 23 N. E. 747, 21 Am. St. Rep. 790; Baker v. State, 30 Ala. 521; People v. Kaiser, 119 Cal. 456, 51 P. 702; Mercer v. State, 83 Fla. 555, 92 So. 535; State v. Learned, 73 Kan. 328, 85 P. 293; Rodriguez v. State, 90 Tex. Cr. R. 566, 236 S. W. 726; State v. James, 32 Utah, 152, 89 P. 460; Hintz v. State, 58 Wis. 493, 17 N. W. 639; People v. Munoz, 25 Porto Rico 192; State v. Hurd, 101 Iowa, 391, 70 N. W. 613; State v. Kimble, 104 Iowa, 19, 73 N. W. 348; Bergen v. People, 17 Ill. 426, 65 Am. Dec. 672; Annotation, 111 Am. St. Rep. 27.

In the case of State v. Nakashima, 62 Wash. 686, 114 P. 894, Ann. Cas. 1912D, 220, the Supreme Court of Washington refers to the case of State v. Fritts, 48 Ark. 66, 2 S. W. 256, and refuses to follow the rule announced therein, but adopts the contrary rule as announced in State v. Brown, 47 Ohio St. 102, 23 N. E. 747, 21 Am. St. Rep. 790. This is the rule adopted in almost all of the states.

In the case of People v. Cease, supra, the court announces the correct rule when it states:

"The respondent was convicted of incest, and sentenced to the state prison for 15 years. The information charged him with having committed the crime of fornication with one Elizabeth Ann Cease, she, the said Elizabeth Ann Cease, being then and there the daughter of the said Sylvester Cease. It appeared upon the trial that the respondent was a married man at the time of the commission of the offense. The statute reads as follows: 'All persons being within the degree of consanguinity within which marriages are prohibited, or declared by law to be incestuous and void, who shall intermarry with each other, or who shall commit adultery or fornication with each other, shall be punished by imprisonment in the state prison not more than 15 years, or in the county jail not more than one year.' How. St. § 9291.

"It is now contended in his behalf that the information is fatally defective because it did not allege that he committed adultery, instead of fornication. The gist of the offense was the act of sexual intercourse with his own daughter. He could not have been prejudiced by the averment that the act which constituted the crime was fornication instead of adultery. We are not inclined to set aside convictions on such a naked technicality. The case to which we are cited by respondent's counsel, Territory v. Whitcomb, 2 Am. Crim. Rep. 159, has no application whatever to the case at bar. The offense charged in that case was fornication; and it would, of course, be necessary to allege and prove that both parties were unmarried.

It was unnecessary to allege that the respondent committed adultery or fornication, inasmuch as the information distinctly charged him with the act which constituted the crime of incest. The case falls within the rule laid down in Hicks v. People, 10 Mich. 395."

The defendant in the instant case was charged with the crime of incest. Under the statutes he was guilty either (a) by adultery or (b) by fornication. The gist of the offense was the act of sexual intercourse with his own daughter, not whether it was fornication or adultery. He was guilty if it be either. We fail to see the force of the argument that it was necessary to allege that the defendant was a married man under these facts, and especially in view of the allegations that the prosecutrix was the daughter and defendant was the father. We therefore hold that it is not necessary where one is charged with incest under the statutes of this state to allege that he was married or unmarried. As stated in the case of People v. Cease, supra: "We are not inclined to set aside convictions on such a naked technicality."

It is next contended that the court erred in permitting to be introduced certain incompetent, irrelevant and prejudicial evidence over defendant's objection. This is based upon the fact that a witness, Mrs. C. C. Johnson, testified that she heard a conversation over the telephone between the defendant and his wife before his conviction and while he was in jail awaiting trial. The conversation was as follows:

"Mr. Wood said they were going to send him to McAlester, and Mrs. Wood asked him what he did such an awful thing for, and he says, 'Well, you know I haven't been well for the last two or three years', and she says, 'That is no excuse, there is doctors', and he said he didn't want to take time off to go to the doctors. * * * He asked her when he got to McAlester, if she would send him some pictures, and she told him she didn't know, that she didn't

have a picture of herself, and he said he would pay for it if she would have it taken, and he wanted to know if she would write to him, and she said she didn't know, that she would try."

It is contended that the case of Hildebrandt v. State, 22 Okla. Cr. 58, 209 P. 785, sustains this contention. We have carefully examined this case and find that the facts are different from the facts in the instant case. There the conversation was between the husband and wife. The party testifying to the conversation heard only what the wife said and he did not hear what the husband, who was the defendant, said. In this case the party testifying was on a party line and heard the conversation of both parties. There the conversation related was the conversation of the wife and not the defendant. Here it was the conversation of the defendant. It is also true that this evidence was merely cumulative to the testimony given by the sheriff of Payne county, and even though it was inadmissible, under the circumstances it would not be reversible error. Carr v. State, 22 Okla. Cr. 371, 211 P. 423.

It is next contended that the court erred in permitting Dr. Clifford Bassett to testify that he examined Mrs. Florence Wood, the mother of prosecutrix, and that he did not find a lump of any kind on her breast, and that he examined the prosecutrix, Leona Wood, and found a lump upon her breast. This evidence was not given in chief by the state but was upon rebuttal. The defendant had testified while upon the witness stand that the mother had a lump upon her breast the same as the prosecutrix had, the prosecutrix having testified that she had a lump upon her breast caused by a blow from the defendant when he made an assault upon her. Under these circumstances, the court did not err in permitting this evidence to be offered in rebuttal. The contention that it was inadmissible for the reason that it permitted prosecution on an-

other and distinct crime is untenable. Dr. Bassett also testified that the defendant asked at one time if Leona was pregnant, and it is contended that this was incompetent. The doctor's answer was that he did not know and had no reason to believe she was. This statement was made at the time Dr. Bassett operated on Leona Wood, the prosecutrix, for appendicitis. We do not believe that this evidence was such as was prejudicial to the defendant sufficient to reverse this case. It was not a privileged communication, as contended.

It is next contended that this case should be reversed because of certain remarks made by the trial court in the presence of the jury after the case had been submitted. The jury, after they had deliberated for some time, were brought into court, the defendant and his attorney being present. The foreman announced to the court that they had been unable to reach a verdict, and was asked by the court a few questions as to how they stood numerically, and was informed six to six. He then asked each individual juror as to what he thought the chances were to arrive at a verdict. Some of them replied that they did not think there was any chance. Others replied that they thought they could, and expressed a desire to try again. The court then said to the jury:

"Well, if there is any help I can give you, any further instructions, any explanation of any instructions I can give you, anything I can do to help you, I will do it. I won't try to force you to agree on a verdict but I want to help you if I can. It would be too bad to have to try this case again, and it will have to be tried over again. What do you think about deliberating a while, and try again. Lots of things you think are hopeless, and then you get together on them. Let's try it again. But when you think it is hopeless, I won't punish you about it by keeping you together any longer. But as long as there is hope, I don't want to discharge you. People would say

if I had kept you together a little longer, you would have gotten a verdict. Now go out and discuss this a little longer. If I could help you in any way I would be glad to do so."

It does not occur to us that these remarks were such as would cause prejudicial error. They were not unfavorable to the defendant. It was of importance to the state and to the defendant that the jury should return a verdict. While the court should be careful in talking to the jury after the submission of the case, we do not find that anything said by the court was such as to prejudice the rights of the defendant. Montgomery v. State, 19 Okla. Cr. 224, 199 P. 222; Highfill v. State, 26 Okla. Cr. 420, 224 P. 729.

The last contention of the defendant is that the court erred in giving to the jury instruction No. 7, which is as follows:

"You are further instructed that the testimony of Leona Mae Wood shows that she was an accomplice in the commission of the offense it is charged the defendant committed, and that you cannot find the defendant, Leonard C. Wood, guilty by reason of the testimony of the said Leona Mae Wood, alone, until you are satisfied beyond a reasonable doubt that the same has been corroborated by other evidence tending to establish the fact that the defendant, did in fact, commit the offense charged in the information; and in this connection, you are instructed that the corroboration herein mentioned need not be by eye witnesses to the commission of the offense, but such corroboration may be by circumstances, and you may take into consideration all of the facts and circumstances proven in the case in determining whether or not the defendant is guilty of the crime charged. You are instructed that such corroboration is not sufficient if it merely shows the commission of the offense, but must be by other evidence, facts and circumstances, tending to connect the defendant with the commission of the offense. It need not be suffi-

cient to show the defendant guilty of the crime charged independent of the testimony of the accomplice, but is sufficient if it tends to connect the defendant with the commission of the offense by independent testimony or evidence corroborating as to some material fact or facts, the testimony of the accomplice."

That part of the instruction complained of is the first sentence, which is as follows:

"You are further instructed that the testimony of Leona Mae Wood shows that she was an accomplice in the commission of the offense it is charged the defendant committed."

In the first place, the law of accomplice in cases of this character has been stated by this court in the early case of Carr v. State, 22 Okla. Cr. 371, 211 P. 423, 424. It is there said:

"While a woman who consents to the crime of incest knowingly, voluntarily, and with the same intent which actuates the man is his accomplice, so that her testimony is governed by the law of accomplice testimony and requires corroboration in order to sustain a conviction, such rule is not applicable where the prosecutrix was at the time of the commission of the offense under the age of consent." Matherly v. State, 62 Okla. Cr. 418, 71 P. 2d 1094.

In the Matherly Case, supra, the law with reference to when one is an accomplice and when it is the duty of the court as a matter of law to so find in cases of this character is fully discussed. It is unnecessary to here quote therefrom. In that case the same was reversed because of the lack of corroboration and the unsatisfactory and contradictory evidence of the prosecutrix and error in the instructions of the court. While there is some similarity in the facts of the two cases, they are materially different. Here the evidence of the prosecutrix is not so unreasonable and unsatisfactory, but she is corroborated

by her sister, Gladys Ruth Wood, who testified to her father's coming to the bed and being familiar with the prosecutrix upon several occasions and other acts on his part. She is corroborated by the evidence of Dr. H. L. Puckett, who testified to an examination of the prosecutrix and to her condition, and his opinion that she had had intercourse over a number of years, also by the testimony of Dr. Clifford Bassett. She was corroborated by Mr. and Mrs. C. C. Johnson and Jud Johnson, and especially with reference to her returning home with them on the evening of the Sunday following the 4th of July, 1939, being one of the occasions she claims she was assaulted by the defendant and which was directly contrary to the evidence of the defendant. She is further corroborated by the statement of the defendant himself to the sheriff of Payne county and in the presence of the assistant county attorney, as hereafter stated, and also other evidence of corroboration and circumstances which it is unnecessary to mention and which justified the jury in finding the defendant guilty.

We have carefully read and examined the record in this case. The prosecutrix was 17 years of age at the time she testified. She had graduated from the Cushing highschool and her education was much better than those generally involved in cases of this character. It is true that the story which she told was revolting, yet under a gruelling cross-examination she at no time changed or varied the story which she told, and as heretofore shown, it was corroborated in many particulars. The defendant was a man far above the average in intellect. He had held a responsible position with a good company for many years. His position in the social world was such that it is hard to realize his committing a crime such as here charged, but there is nothing in the record that justifies

an interference with the verdict rendered by the jury. The defendant himself, after his arrest and after being advised by the county attorney of his constitutional rights and that any statement he made could be used against him at his trial, made the voluntary statement in the presence of the sheriff of Payne county that he had intercourse with his daughter "a lot of times." Defendant, when asked what he thought ought to be done to him, said, "I want to plead guilty and go on down." Defendant, testifying in his own behalf, said that this statement was made after the sheriff had told him that if he would plead guilty there would be nothing put in the papers about it; that he did not understand the nature of the charge of incest at that time, and that he did not mean by this statement that he was guilty of having intercourse with his daughter, and that it was made for the purpose of protecting his family and avoiding publicity. These were all questions for the jury to pass upon, and the evidence being such that, if the jury believed that he was guilty, they had a right to so find, which they did, and the verdict will not be set aside where the evidence is sufficient to sustain it.

The record reveals, and much stress is placed thereon in the brief of defendant, that just prior to the trial in the district court, the sheriff of Payne county and other representative citizens came to the State Capitol at Oklahoma City to see the Governor and ask that he direct the Attorney General to send an assistant to Payne county to assist in the prosecution of this case and to file other charges against this defendant. This was done, as was the right under the law. The record does not reveal that the defendant was prejudiced or deprived of any of his substantial rights by reason of this action. The sheriff was cross-examined by the attorney for the defendant with

reference to this matter, and positively denied that he had taken any steps against the defendant other than such as to do his duty as a public officer. No evidence was offered by the defendant to show that he had in any way been prejudiced or denied any right which he had under the law. We have carefully examined the evidence of defendant and those who testified in his behalf. There is some conflict in the evidence, but as stated, this was for the jury to decide and not an appellate court. It is only when there is not sufficient evidence to sustain the verdict that the same will be set aside.

The judgment and sentence of the district court of Payne county is therefore affirmed.

JONES, J., concurs. DOYLE, J., absent.