## LEONARD WOOD v. STATE.

No. A-9966.   Sept. 3, 1941.

(116 P. 2d 728.)

Mac Q. Williamson, Atty. Gen., Jess L. Pullen and Owen Watts, Asst. Attys. Gen., and David P. Hervey, Co. Atty., of Stillwater, for the State.

Leon J. York, of Stillwater, for defendant.

BAREFOOT, P. J. Defendant was charged in the district court of Payne county with the crime of rape upon Leona Mae Wood; was tried, convicted of rape in the second degree and sentenced to serve a term of five years in the penitentiary, and has appealed.

This case, by agreement of counsel and order of the court, has been consolidated with 72 Okla. Cr. 347, 116 P. 2d 734, against this same defendant, and in which an opinion has this day been rendered by this court. The defendant has been unable to give bond pending appeal, and for this reason the cases have been advanced and are decided at this time. By reason of the similarity of the facts in each of the cases, it will be unnecessary to here again recite them, as they appear in the former case.

In the instant case the defendant, Leonard Wood, was charged by an information which contained two counts. The first count charged the defendant with rape by force, and the second count charged the defendant with having intercourse with Leona Mae Wood, a female under the age of 18 years and over the age of 16 years, to wit, 17 years, and being of previous chaste and virtuous character.

In this case it was alleged that the defendant committed the crime of rape upon his daughter on the 8th day of October, 1938. She testified that on that date they lived about one and one-half miles in the country from Cushing, Payne county, and that her mother and younger sister went to town about 1:30 p. m. for the purpose of getting some shoes for her sister. She testified as follows:

"Q. After they had gone, did anything unusual take place there at the home? A. Yes, sir. Q. What happened? Where were you—(Here witness cries.) Q. What bedroom in the home were you when this unusual occurrence happened? A. In the dining room typing. Q. Just tell us what happened there while you were in the dining room engaged in your typing? A. My father came in, and— (here witness cries again)—he walked over to me and told me to come on with him and then he—I said I wouldn't go because I had to do my typing and he—he pulled me over to the bed and took off my clothes and part of his and got on top of me. Q. Did he have an act of intercourse

with you? A. Yes, he did. Q. Were his private parts placed in your private parts? A. Yes, sir. Q. Did he at any time strike you? A. Yes, he did. Q. During the time in which he was molesting you? A. Yes, sir, when I tried to get up off of the bed he struck me. Q. Did you use any force to resist the attack? A. Yes, sir, I did all I could, but I wasn't as strong as he was. Q. Was your resistance overcome by the force he used on you? A. Yes, sir. By Mr. York: Object to this as leading and suggestive. By the Court: Overruled. By Mr. York: Exception. Q. You say he struck you. How many times? A. Twice. Q. Twice? A. Yes, sir. Q. Did you lose your consciousness? A. I did the last time he struck me. Q. Prior to the time he struck you the last time, had he performed an act of intercourse? A. Yes, sir. Q. Prior to the time you became unconscious? A. Yes, sir. Q. About what time did that take place? A. Sometime after 1:30, I don't know exactly. Q. Do you know how long you were unconscious? A. No, sir, I don't have any idea. Q. About what time did you regain your consciousness? A. I don't know what time it was. Q. Did your mother and sister come home? A. Yes, sir, they came home about 4:30. Q. Where were you when they came home? A. Laying on the back bedroom bed. Q. Was your father there? A. Yes, sir, he was there. Q. What, if anything, did he say to your mother and sister when they came home? A. He told them I had fainted and when they wanted to call the doctor, he told them no, I would be all right, not to call the doctor. Q. At that time, did you tell anybody about this act of intercourse your father had had with you? A. No, sir. Q. Had your father had other acts of intercourse with you prior to that time? A. Yes, sir. Q. Did he have acts of intercourse later on, after the 8th? A. Yes, sir. Q. When did he first start to have intercourse with you? A. About—I was in the eighth grade, about four or five years ago. Q. What did he say to you relative to those acts? A. He told me that it was a part of growing up, and I was supposed to take it and not say anything about it, and it was what I was supposed to do. Q. Did you afterwards learn as you grew older that

was not the proper moral code for daughters and fathers to have? A. Yes, sir. Q. What did he tell you then? A. He told me my mother had been operated on and it was my duty to take her place, and if I wanted to have peace in the family I was supposed to do it and not say anything about it. Then he threatened to kill us all, and my mother— By Mr. York: Objected to as immaterial, and not responsive. By the Court: Fix the time and place. Otherwise it will be overruled. By Mr. York: Exception. Q. Relative to October 8th, 1938, did he at any time, right there on that particular day, make any threats to kill you and your mother? A. Yes, he did. Q. Had you ever had intercourse with anyone prior to the time your father first had intercourse with you? A. No, sir, I had not. Q. Have you had intercourse with anybody else at any time other than your father? A. I have not."

Under the law one may be guilty of rape upon his own daughter. Signs v. State, 35 Okla. Cr. 340, 250 P. 938. He may also be guilty of incest. Each act is a separate offense. 31 C. J. 382, section 30; Williams v. State, 40 Okla. Cr. 303, 268 P. 329; Moorehead v. State, 38 Okla. Cr. 328, 261 P. 231. The act complained of and charged in the incest case was on the 30th day of December, 1939. The act here charged was on the 8th day of October, 1938.

For reversal of this case it is contended:

(1) The defendant was not given a fair and impartial trial.

(2) The court committed error in permitting the state to introduce the alleged confession that was made by the defendant to the sheriff while he was in jail.

(3) The evidence was insufficient to convict the defendant.

Many of the objections urged have been referred to in the incest case heretofore cited.

The statute defining rape is Oklahoma Statutes 1931, section 2515, Oklahoma Statutes Annotated, Title 21, section 1111, and is as follows:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances:

"1st. Where the female is under the age of sixteen years .

"2nd. Where the female is over the age of 16 years and under the age of 18, and of previous chaste and virtuous character.

"3rd. Where she is incapable through lunacy or any other unsoundness of mind, whether temporary or permanent, of giving legal consent.

"4th. Where she resists but her resistance is overcome by force and violence.

"5th. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution.

"6th. Where she is prevented from resisting by any intoxicating narcotic, or anesthetic agent, administered by or with the privity of the accused.

"7th. Where she is at the time unconscious of the nature of the act and this is known to the accused.

"8th. Where she submits under the belief that the person committing the act is her husband, and this belief is induced by artifice, pretence or concealment practiced by the accused, or by the accused in collusion with her husband with intent to induce such belief. And in all cases of collusion between the accused and the husband of the female, to accomplish such act, both the husband and the accused shall be deemed guilty of rape."

Under the contention that the defendant did not have a fair and impartial trial, it is insisted that, by reason of the fact that the sheriff of Payne county and other parties came to Oklahoma City just prior to the trial in

the incest case for the purpose of seeing the governor and asking that he request the attorney general to send an assistant to assist in the prosecution of defendant and, if necessary, file additional charges against him, that he was prejudiced by this action. The county attorney and sheriff, under the law, had the right to make this request, and the governor had the right, under the law, to request the attorney general to appear. Oklahoma Statutes 1931, section 3532, O. S. A. title 74, section 11. Ex parte Kelly, 45 Okla. 577, 146 P. 444; Viers v. State, 10 Okla. Cr. 28, 134 P. 80. No showing has been made in the record that this action was to the prejudice of the defendant. This burden was upon the defendant. The evidence revealed that the act complained of was committed on the 8th day of October, 1938. Prosecutrix testified that she was born on the 20th day of March, 1922. This would have made her a little over 16½ years of age at the time of the act charged. After the evidence had been presented to the jury, attorneys for defendant made a motion that the county attorney be required to elect upon which count of the information he stood, and in compliance with the order of the court, the first count in the information was dismissed and the state relied upon the second count for a conviction. This they had a right to do. It is a rule of practice well settled that the same offense may be alleged in different language in separate counts in the same indictment or information, and in many instances it is necessary to follow such practice. 31 C. J. 382, sec. 31; Wines v. State, 7 Okla. Cr. 450, 124 P. 466; Davis v. State, 17 Okla. Cr. 604, 191 P. 1044; Brock v. State, 39 Okla. Cr. 162, 263 P. 1115; Moorehead v. State, 38 Okla. Cr. 328, 261 P. 231.

In the case of Dodson v. State, 30 Okla. Cr. 135, 235 P. 268, 269, this court said:

"The proof that the prosecutrix was a female of previous chaste character need not be made by evidence directly upon the point other than the testimony of the prosecutrix, but may be shown prima facie by presumptions from other facts.

"The prosecutrix testified that she had not had sexual intercourse with any other man, and the evidence shows that she had always resided with her parents and went in such society as the neighborhood afforded. This was competent evidence that she was of previous chaste character."

The jury returned a verdict of guilty under the second count of the information, and the defendant was sentenced to five years in the penitentiary. We find no irregularity in these proceedings or nothing that deprived the defendant of a fair and impartial trial or that deprived him of any substantial right which he had under the law.

The second contention that the court erred in permitting the sheriff of Payne county to testify to the statement made by the defendant after he was placed in jail and to the introduction in evidence of the statement signed by defendant will be considered. The evidence of the sheriff, L. L. Fisher, is that, after defendant had been placed in jail, he and the assistant county attorney of Payne county talked with him the morning following his arrest; that the assistant county attorney did most of the talking and that he heard the conversation; that the defendant was warned that any statement he made could be used against him and that the statement that was made was a voluntary statement made by defendant after he had been so advised; that defendant signed the written statement, which was in the form of questions and answers by the assistant county attorney, and that this was done in the district courtroom, and that the court reporter took the questions and answers. This statement was as follows:

372

"Statement of Leonard C. Wood, taken on the 24th day of January, 1940. Q. You have been charged with incest or having sexual relationship with someone in your family other than your wife, and I particularly refer to Leona Mae. I want to ask you, since 1936, how many times have you attacked or assaulted Leona Mae sexually? A. I don't have any idea. Q. As many as ten? A. I guess it would be that many. Q. Probably more than that? A. No, I don't believe so. Q. When is the last time, the last assault you made on her? A. I don't know. Q. Was it sometime in December, last year? A. No, I didn't have one then. Q. About how long ago was it? A. Well, it was before I moved to town. In November, I guess. Q. November, 1939? A. Yes, sir. That was an assault I made. I never had intercourse. Q. You did attempt to? A. Tried. Q. What would you do? A. I tried to love her up and try to get my hands on her and wrestle her all over the bed, or in the bathroom, or any place we might be. Q. You don't know whether or not you ever penetrated her? A. Well, no, to my knowledge I don't know. I don't think I did. Q. You stated to us a while ago you might have done so during one of those periods? A. It is possible that I could have. But I do not say that I did. Q. The first time you ever had this relation with the little girl, do you remember about what time that was? A. No, sir, I wouldn't attempt to give you the date. Q. Have you during the first few times that you assaulted her, do you remember whether or not there was any penetration? A. No, sir, nothing only my finger. Q. Then later on, after you had been playing with her with your finger, had you ever penetrated her with your private parts? A. Not to my knowledge. I don't think I ever have. I just can't believe that I did. Q. Did you ever try to play with her? A. No, sir, never did. Q. The only girl you have ever bothered is your own daughter. A. Yes, sir, that is right to my knowledge, I know that is right. Q. Did you ever play with the little girl, Gladys Ruth? A. I try to get her on my lap and love her, but never tried to do anything else. They won't any of them let me get near them. I am crazy to love them and never

have been able to in my life. They are afraid of me, and I can't blame them. I try to love one of them and try to do what is right and I cry for them, and nothing will bring them up to me."

A part of sheriff Fisher's evidence was as follows:

"Q. What did he tell him? A. Well, he told him what he might say could be used against him in the trial of the case. Q. What did the defendant say as to being advised of those rights? A. I believe he said he knew it, or something to that effect. I wouldn't be sure just what he said. Q. Do you know whether Mr. Williams asked him if he had had sexual intercourse with his daughter, Leona Mae? A. Yes, sir. Q. What did he say in response to that question? A. He said he had. Q. Did you hear Mr. Williams say to him, about how many times he had had sexual intercourse with his daughter, Leona Mae? A. Mr. Williams asked him how many times would he say, and he said a lot of times. I believe Mr. Williams then asked him would he say a thousand times, and he says 'Yes,—No', he says, 'I wouldn't say that many, but a lot of times.'"

In the case of Pressley v. State, 71 Okla. Cr. 436, 112 P. 2d 809, 813, we have recently reviewed the earlier decisions of this court upon the question of the admissibility in evidence of confessions or statements made by a defendant while in the custody of officers prior to his trial. The court, after reviewing these decisions, comes to the conclusion:

"As a general rule, all confessions are prima facie admissible in evidence. Unless an objection is interposed, the practice has been to receive confessions without question. If an objection to the admissibility of a confession is interposed by the defendant, a question of law is presented to the court and should be determined in the absence of the jury, preliminary to allowing the confession to go to the jury. The burden is on the defendant to show that it was procured by such means or under such

circumstances as to render it inadmissible, unless the evidence on the part of the state tends to show that fact.

"The trial court, in ruling upon the question of law which was presented to him, stated: 'There is a conflict in the testimony here, and it will be for the jury to determine under proper instructions.'

"There may be a conflict in the testimony, and yet the trial court could find that the confessions were improperly obtained and inadmissible. Where a direct conflict appears in the evidence as to whether the confessions were voluntary, trial courts generally have adopted the practice of submitting the facts and circumstances surrounding the giving of a confession to the jury; not that the jury may pass upon its admissibility, but for the purpose of enabling them to judge what weight and value should be given to the confessions as evidence, and the jury may disregard it if they are not satisfied that it is voluntary."

See Howington v. State, 35 Okla. Cr. 352, 250 P. 941; Lucas v. State, 26 Okla. Cr. 23, 221 P. 798; Mays v. State, 19 Okla. Cr. 102, 197 P. 1064; Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L. R. A. 1917D, 383. Also, Williams v. State, 65 Okla. Cr. 336, 86 P. 2d 1015.

In the instant case the trial court followed the rule here announced. The jury was excused and the court heard the evidence and came to the conclusion that the statement made by defendant was admissible. This evidence was submitted to the jury by proper instruction, as follows:

"You are instructed that if you believe from the evidence that free and voluntary statements were made to the officers by the defendant in reference to the offense charged herein, then you may take them into consideration with all the other facts and circumstances proven in the case and they should be given such weight and credit as you may think them entitled to receive, but if you find there was any inducement held out or threats or violence offered to the defendant to secure from him

such a statement and he acting under such inducement or threats did make such a statement, then you should not consider such statement, if you find one was made, in arriving at your verdict. For statements or confessions to be competent for your consideration, they must be freely and voluntarily made and if not so made, then you should disregard them, but the fact that they may have been elicited by questions propounded to the defendant does not make them incompetent for your consideration. It is not necessary that such statements be spontaneous, that is, to proceed wholly from the suggestion of the defendant."

In the Pressley Case, supra, the court did not submit an instruction similar to the above. The case was reversed for this and other reasons.

From the above it occurs to us that the statements made by the defendant in this case were voluntary and that therefore the evidence of the sheriff and the written statement were admissible in evidence. But I desire at this time to call the attention of the county attorneys of this state to the practice of taking statements from defendants who have been arrested and placed in jail prior to the time that they have had an opportunity to procure counsel. This practice should be carefully guarded, and no statement should be taken until the defendant has been warned that any statement he may make could be used against him at the trial, and that if he made the statement it would be a voluntary statement, and that it was not necessary for him to make a statement unless he voluntarily desired to do so. The Constitution and statutes of this state provide that a defendant cannot be a witness against himself. Oklahoma Constitution, art. 2, sec. 21; Okla. Stats. 1931, sec. 3068, O.S.A. title 22, sec. 701. He is also entitled to counsel. Okla. Stats. 1931, sec. 2929, O. S. A. title 22, sec. 464. Officers should be as zealous in the enforcement of these rights as in the conviction of the defendant. Often

it is easy to procure evidence to convict one and it is unnecessary to procure a statement. Good judgment should be exercised by the officers to see that the constitutional and statutory rights of defendants are safeguarded prior to their trial and while in the custody of the officers of the law. We are now having many appeals to this court and writs of habeas corpus calling attention to these cases and contesting the fact that statements made by defendants while in the custody of the officers were made without warning and contrary to the rights afforded the defendant by the constitution and statutes of this state.

From what has heretofore been stated, it will be noted that we find nothing in this record to justify the setting aside of this judgment and sentence for the reason that the evidence was insufficient to justify the same. The evidence was somewhat conflicting, but there was sufficient corroboration of the evidence of the prosecutrix, as has been pointed out. The jury has passed upon the same and under the law this court will not interfere merely because there is some conflict. The fact that the prosecutrix did not tell of her experience for a long period of time may be a circumstance in defendant's favor for the consideration of the jury, but she gave as an explanation that she feared for her life and the life of her family. There was no conflict or contradictory statements made by her as a witness. The jury heard the evidence and all the facts and circumstances. It was for them to decide where the truth lay. We are of the opinion that the judgment and sentence of the district court of Payne county should be affirmed, and it is so ordered.

JONES, J., concurs. DOYLE, J., absent.