### H. G. HILDEBRANDT v. STATE.

No. A-3423.    Opinion Filed Oct. 14, 1922.

(209 Pac. 785.)

(Syllabus.)

1. **Witnesses—Conversations Between Husband and Wife Over-heard—Admissibility.** Oral declarations or conversations between husband and wife, overheard by third persons, are admissible, whether such communications were overheard accidentally or by design.

2. **Same—Admission of Evidence of Telephonic Conversation Erroneous and Prejudicial.** Witness, an officer, was permitted to

testify to statements made by the wife of defendant while communicating to some person by telephone. Witness had first answered the call, and testified he believed the voice of the person calling was that of defendant, but, after defendant's wife went to the telephone, witness could not understand what was said by the other party to the conversation, nor could he identify at that time the voice of such person as that of defendant. Held, the statements of the wife in such conversation imputing guilt to defendant were improperly admitted. For reasons for so holding, see body of opinion. Held further, the admission of such evidence in this case was prejudicial to defendant.

Appeal from District Court, Garfield County; James B. Cullison, Judge.

H. G. Hildebrandt was convicted of unlawfully having possession of intoxicating liquor, and he appeals. Reversed and remanded.

E. C. Patton, for plaintiff in error.

The Attorney General and E. L. Fulton, Asst. Atty. Gen., for the State.

MATSON, J. Plaintiff in error (hereinafter referred to as defendant) attacks the constitutionality of the law (section 2, c. 26, Session Laws 1913). The questions involved under such assignment of error were decided adversely to defendant in the case of Hildebrandt v. State, 19 Okla. Cr. 30, 197 Pac. 852.

Defendant in this court for the first time attacks the sufficiency of the information. While the information is not a model of criminal pleading, it is sufficient in the opinion of the court to withstand the objections urged against it.

Defendant was convicted of the unlawful possession of intoxicating liquors, a second violation under the provisions of section 2, c. 26, Session Laws 1913. The evidence against him was altogether circumstantial. Defendant resided in the

northeast suburbs of the city of Enid. Certain officers, armed with a search warrant, on the day in question made a search of the premises of defendant, including the residence and grounds surrounding the same.

A small quantity of bottled beer (about eight quarts), about one-half gallon of wine, and four bottles of whisky (either pints or half pints) were found in the house. This quantity was not sufficient to create prima facie a presumption of intent to violate the provisions of the prohibitory liquor laws.

While one officer searched the house, three others were engaged in searching a patch of potatoes located about 250 feet southeast of defendant's house, and nearer to his residence than any other in that neighborhood, and on land which the records in the office of the register of deeds showed belonged to defendant's wife. Over 600 quarts of bottled whisky were found buried in a trench along the rows of growing potatoes. This quantity had the cardboard carton surrounding each bottle. Defendant was not present when the search was made. The wife of defendant was at home at the time.

Defendant claimed the whisky found in the potato patch was not his; that he did not place it there and had no knowledge of its being there at the time; that the land on which it was found did not belong, at that time, to him and his wife; that they had previously sold the land to a man by the name of Robertson, who was a traveling man and lived in Kansas City; that he and his wife had executed and delivered a deed to this land to said Robertson; that the deed was not acknowledged, but merely witnessed; that Frank Davis had planted the potatoes on the land; that he did not know where Frank Davis was at that time; that defendant was out of town on the day the search was made, and had no telephone conversation with his wife that day.

It is contended that the trial court erred in permitting the state to introduce certain irrelevant and incompetent evidence over the objection and exception of defendant. The officer who searched the house testified that while he and defendant's wife were in the house the telephone rang, and that he answered the call; that some one called for that number, and that, without further communicating with such person, he called defendant's wife to the telephone; that he was acquainted with defendant and had talked with him on numerous occasions, and believed he knew his voice; that to the best of his knowledge and belief it was the voice of defendant he had heard over the telephone when he answered the call; that, after defendant's wife went to the telephone, he heard her say, "There is a bunch of men here; they are digging up that stuff," and again, "I don't recognize any of them except Al Thrasher;" that when defendant's wife was talking the witness could not hear what was said by the party who was talking to her; that he could hear a voice over the telephone, but could not identify it or understand what was said.

Counsel for defendant objected to this testimony on the ground that it was incompetent, irrelevant, and immaterial hearsay, and upon the further ground that it was an ex parte declaration of a third person, and not binding on defendant, and further that it was a privileged communication between husband and wife, to which either was an incompetent witness under section 5882, Revised Laws 1910. Said section provides:

"Except as otherwise provided in this and the following chapter, the rules of evidence in civil cases are applicable also in criminal cases: Provided, however, that neither husband nor wife shall in any case be a witness against the other except in a criminal prosecution for a crime committed one against the other, but they may in all criminal cases be witnesses for

each other and shall be subject to cross-examination as other witnesses, and shall in no event on a criminal trial be permitted to disclose communications made by one to the other except on a trial of an offense committed by one against the other.''

We think the objection that this evidence was incompetent because privileged under the general weight of authority is not well taken, as it is generally held that oral declarations or conversations between husband and wife overheard by third persons are admissible, whether such communications were overheard accidentally or by design. The cases so holding, however, are cases where the witness was in a position to testify to both ends of the conversation, and it appears to us that, even if it be admitted in this case Mrs. Hildebrandt was in communication by telephone with her husband, the defendant, it would be a dangerous precedent to permit a third person to testify to a portion of that conversation when the party attempted to be bound by it is compelled to waive the privilege, although he has no knowledge of the fact that an eavesdropper is in a position to hear that which occurs at the other end of the line of communication and nothing he says. To say the least, evidence of this kind would be, if permitted under the rule of waiver, very unsatisfactory in its results and a far-fetched exception to the hearsay rule.

Under the proof of the identity of the defendant as the person who was talking to his wife, we believe the court should have excluded this testimony. While the witness does testify that when he first went to the telephone he believed that it was the voice of defendant calling, he is not positive of that fact, and further the evidence is uncontradicted that after defendant's wife began to talk the witness could not identify the person talking at the other end of the line, heard nothing he said, and testifies positively that he is unable to state whether or not Mrs. Hildebrandt was talking to her husband

at the time. Under such circumstances, the evidence should have been excluded.

But, assuming that Mrs. Hildebrandt was in communication with her husband, was this evidence admissible? We can conceive of three grounds upon which evidence of this character could properly have been admitted: (1) As a declaration of a coconspirator in furtherance of the conspiracy; (2) as part of the res gestae; (3) as a declaration of a third person made in the presence and hearing of the defendant. But was this evidence admissible on either of these grounds? We think not.

It was certainly not admissible as an act or declaration of a coconspirator. The wife was not jointly charged with the commission of the offense, nor is there any evidence in the record of a conspiracy existing between husband and wife, and if such had been the case it would have been incumbent upon the state, in a prosecution of this character, to have introduced evidence rebutting the presumption of duress before the wife could have been convicted as a coconspirator with her husband. See section 2099, Revised Laws 1910.

Neither was this evidence admissible as part of the res gestae. It was not that species of spontaneous exclamation or declaration descriptive or explanatory of the act forming the offense which permits such evidence as an exception to the hearsay rule. That it was admissible as an act or declaration of a third person made in defendant's presence and hearing is more difficult of correct solution, but the court is firmly of opinion that such evidence was not admissible even on this ground. In order to render such evidence admissible, certain preliminaries must be shown to exist before defendant can be presumed to have assented to the declaration and to have been bound by it if he remained silent, and it is well established that mere silence is no ground of inference against him unless

he was called upon by the circumstances to enter his dissent. Here the defendant had no knowledge that anybody except his wife was present; he had no knowledge that anybody was hearing what his wife was saying to him; he was in no position to interpose any explanation or dissent to any person except his wife. Certainly he would not be held called upon to dissent to another under such circumstances. And further it is not even shown that he remained silent. So far as the witness was able to testify, the defendant may have dissented, or he may have made one of a hundred different explanations which would place an entirely different aspect upon the conversation. Under such circumstances, therefore, to admit such statement on the part of the wife, without an affirmative showing that the defendant heard it, acquiesced or assented to it, would be to announce a rule of evidence fraught with great danger to innocent men.

The implication of assent to a statement affecting the guilt or innocence of a person from an omission to controvert, quality, or, explain it arises from the fact that a person knowing the truth or falsity of a statement affecting his rights made by another in his presence and naturally under circumstances calling for a reply, will deny it, if he be at liberty to do so, if he does not intend to admit it. Donnelly v. State, 26 N. J. Law, 601.

While the statement of the wife in this instance was probably made in the hearing of defendant, can it be said to have been made in his presence within the meaning or the exception to the hearsay rule which permits evidence of statements of third persons affecting guilt? We think not. The word "presence" under such circumstances means such a physical presence as affords the person intended to be charged by assent from silence an opportunity to deny the charge at the time. Here no such opportunity existed. According to the testimony of the witness, he could not understand what was said

by the person talking over the telephone to defendant's wife. So far as the witness knows, defendant, if he was the person talking, may have made an explanation perfectly consistent with his innocence. In our opinion, therefore, it cannot be said that defendant was at liberty to deny the statement made against him to the witness who testified to it. Can it be said that the evidence here admitted comes within any well-known exception to the hearsay rule? We believe that it cannot. After a diligent search of all reports at our command, we have been unable to discover a decision directly in point, and none has been called to our attention in the briefs of either counsel for appellant or for the state.

Since this conversation was not in the presence of defendant, it was clearly inadmissible, and, unless it appears that it does not operate to the prejudice of defendant, we think its admission is good ground for a new trial. Upon this point it seems to us there can be no question. The evidence of defendant's guilt was wholly circumstantial. There was no direct evidence that defendant was the owner and had possession of the whisky found buried in the potato patch. No witness testified to any act of ownership or control over this whisky at any time by defendant. There was no evidence that the whisky found in the potato patch was the same brand as the small bottles found in the house. There was no evidence that defendant had sold any whisky of any kind to anybody, either of the brand found buried in the potato patch or of any other brand. While the law at that time created a presumption against the possessor of more than one gallon of whisky or wine at a time at his place of residence and more than one cask of beer of an intention to sell same, or to otherwise dispose of it in violation of law it is nevertheless incumbent upon the state, before a conviction should be permitted to stand, to prove possession without question beyond a reasonable doubt.

If the quantity of intoxicating liquors found in the residence were a sufficient quantity to create prima facie an intention to violate the provisions of the prohibitory liquor statutes, the admission of this evidence could be held nonprejudicial. The whisky dug up in the potato patch was not found on the immediate premises of the residence occupied by defendant at that time. While it was found on a lot which either then belonged to him and his wife or had some six or eight months prior thereto belonged to them, it was located more than 250 feet from the residence, the lot being vacant, and there is no proof that defendant was at that time occupying or controling it. Certainly the state had access to some neighbors of the defendant to prove the exercise of supervision or control over these premises by defendant; yet not a neighbor was called to prove any acts on his part which would indicate that he had been occupying and controlling the premises on which this large amount of whisky was discovered immediately prior to, or at the time of the search. The statement of defendant's wife, ''They are digging up that stuff'', certainly created a very strong inference of defendant's knowledge that the whisky was buried in the potato patch, and that the defendant was the owner thereof. Under the state of this record such statement, it appears to us, was clearly prejudicial. Evidently the wife's statement must have had a most powerful persuasive effect upon the jury, and led it to conclude that defendant was possessed of the whisky found in the potato patch.

A careful review of the record convinces us that defendant was not accorded that fair and impartial trial to which he is entitled under the Constitution and laws of this state.

For reasons stated, the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinon.

DOYLE, P. J., and BESSEY, J., concur.