## WORLEY v. STATE.

No. A-11649. Feb. 11, 1953.

(253 P. 2d 573.)

Sam J. Goodwin, Pauls Valley (Bowie & Bowie, Pauls Valley, of counsel), for plaintiff in error.

Mac. Q. Williamson, Atty. Gen. and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, J. The plaintiff in error, Scott Worley, defendant below, was charged in the county court of Garvin county, Oklahoma, with the offense of unlawful possession of intoxicating liquor. The information alleged the offense to have been committed on May 12, 1951, when the defendant was found to be in possession of 9 pints of tax-paid whiskey in Garvin county with the unlawful intent to sell and dispose of the same in violation of the prohibitory liquor laws.

He was tried by a jury, convicted, his punishment fixed at a fine of $200 and 30 days in the county jail. Judgment and sentence was entered accordingly from which this appeal has been perfected.

Briefly, the evidence on behalf of the state discloses that Claude B. Swinney, sheriff of Garvin county, under the authority of a valid search warrant, with 3 of his deputies, went to the home of the defendant located about one-fourth mile south of the Rush Springs bridge on Highway 77 south of Pauls Valley. The officers upon searching the premises found 9 pints of green label Old Crow whiskey in a chicken pen buried in the ground in a stash on said premises. The whiskey was concealed in a 5-gallon can buried in the ground with a piece of tin on top of the can which had been covered over with dirt. The state's case further showed that the defendant was in possession of a federal retail liquor dealer's license stamp.

The defendant did not deny the possession of the whiskey. His defense was that while he had sold whiskey at prior times he had not sold any for about 8 months; that he had this whiskey for his own personal use. He related that he was a disabled World War I veteran drawing a pension of $72; that both he and his wife were under the doctor's care. She had heart trouble and he was unable to work, and that they had been advised to use the whiskey in connection with the treatment of their ailments. He related that his reason for his possession of the federal stamp was that a federal man came along and asked him if he didn't want to renew it and told him that if he wanted to keep the whiskey for medical purposes he would have to renew his old liquor dealer's stamp, which would prevent him from being raided by the federal officers. In this connection he related he had been raided numerous times and the officers found no whiskey; that he hid the whiskey as he did in order to avoid the confiscation of the liquor by local officers, who had raided him so frequently. The defendant further offered the testimony of a man by the name of H. H. Armstrong, to the effect, that he had tried to buy whiskey at Scott Worley's a dozen times and Scott didn't have it; that it had been over a year since he had bought any from Scott Worley. T. B. Boydston, taxi driver, related that he had taken some of his passengers to Scott Worley's where they attempted to buy whiskey and that they were unable to purchase it from him.

The state in rebuttal offered the testimony of Joe Wilson to the effect that he was a deputy sheriff and police officer at Lindsay. On April 6 he had occasion to be in Pauls Valley and together with Robert Hood, deputy sheriff, he went to the Moody Hotel and made a telephone call and called No. 780-W and had a conversation with a man who answered the phone stating that he was Scott. In the conversation he related that he asked Scott if he had any Scotch. He said, "No, I didn't." He asked if he had any other kind. He said he had 2 kinds, red and green label and told him one was Schenley's but he could not recall the other kind of whiskey Scott was supposed to have. He stated that the purpose of the phone call was to enable them to have Scott Worley's phone disconnected. He testified that he did not know Scott Worley and could not identify him except for the fact that he said that he identified himself as Scott when he was talking. Officer Hood, in rebuttal, was permitted to testify at the time he did not know to whom Mr. Wilson was talking but that he took notes in relation to the conversation and that he said Scott informed Mr. Wilson that he had Fleischman in the green label and Sunny Brook in the red label; that he did not know to whom Wilson was talking except that he gave him the number to call. He related that at said time he called several other numbers. The defendant moved to strike the testimony of Hood and Wilson for the reason it was incompetent, irrelevant and immaterial and hearsay testimony and that the jury be instructed to disregard the same, but the trial court overruled him to which he saved an exception. The foregoing in substance constitutes the factual basis for this appeal.

The defendant urges but two contentions. First, that the trial court erred in not instructing the jury on the defendant's defense to the effect that he had the intoxicating liquor in his possession for his own personal use and benefit. On this proposition the defendant submitted the following requested instruction which the court refused, to which refusal the defendant excepted and exception was allowed:

"The jury are instructed that the defendant admits having possession of the liquor in controversy in this action, but contends, and has offered evidence tending to show, that this possession of such liquor was intended for his own personal use and without any intention of violating any of the provisions of the prohibitory liquor laws of the State of Oklahoma; and, in this connection, you are instructed that possession of any amount of intoxicating liquor, intended for his own personal use, is not a violation of the law, and unless you believe from the evidence, beyond a reasonable doubt, that defendant's possession of the liquor shown from the evidence to have been possessed by defendant was for an unlawful purpose, as elsewhere in these instructions defined, then it is your duty to return a verdict of 'not guilty'."

In this connection an examination of the instructions discloses that in none of the instructions given do they purport to set forth the defendant's theory of his defense. We are of the opinion that it constituted reversible error not to instruct the jury on the defense interposed by the defendant to the effect that he was in possession of the intoxicating liquor for his own personal use and benefit. The requested instruction was identically the same as that which this court held it was error for the trial court to refuse to give in Bock v. State, 80 Okla. Cr. 28, 156 P. 2d 381, written by Judge Jones of this court. The identical question was presented in Harper v. State, 94 Okla. Cr. 371, 236 P. 2d 272, 275, wherein in the body of the opinion the court said:

"Of course, the defendant having testified under oath that he was keeping the liquor in question for his own personal use, and not for sale placed in issue that very question, notwithstanding the fact that he possessed a current retail liquor dealer's stamp, which was prima facie evidence that he held this whiskey for the purpose of sale, 37 O. S. 1941 § 81, and that he possessed more than one quart of whiskey, which was also prima facie evidence of an intent to sell, 37 O. S. 1941 § 82. The intent to sell is the gist of the offense of unlawful possession of intoxicating liquor. Sparks v. State 77 Okla. Cr. 428, 142 P. 2d 377. This was the ultimate question for the determination of the jury.

"As stated in an opinion by Judge Jones, in Bock v. State 80 Okla. Cr. 28, 156 P. 2d 381, 382: 'In Oklahoma, the possession of intoxicating liquor for his own personal use is not unlawful regardless of the quantity a person has in his possession. Where a person has in excess of one quart in his possession under the statute such possession is prima facie evidence of an intent to sell, 37 O.S. 1941 § 82, but this is not conclusive, and where the defendant contends that he had the intoxicating liquor for his own personal use, such contention raises an issue for the determination of the jury under proper instructions. * * * If they should determine that he had it for the purpose of sale, conveyance, or other unlawful purpose, their verdict should be that of guilt.'

"Under the instructions given all that was required of the state was to prove that defendant had possession of more than one quart of whiskey and the jury was not required to consider the question of intent. We therefore conclude that the substantive rights of the defendant were violated, and for such reason he is entitled to a reversal of the judgment entered."

Under the conditions herein, we think the defendant's theory of defense was not called to the jury's attention and such failure so to do constitutes reversible error.

The Attorney General contends that the court instructed the jury on every material issue in the case. We cannot agree with this contention, particularly

in view of the fact that the defendant's sole ground of defense was that he had possessed the liquor in question for his own personal use and benefit and not for the purposes of sale, barter, etc., on which theory the trial court did not instruct the jury.

Secondly the defendant urges that the trial court permitted the introduction of "incompetent, irrelevant, immaterial and prejudicial statements and hearsay evidence" over the defendant's objections and exceptions in relation to the purported telephone conversation supposedly had over the telephone between Mr. Wilson and the defendant and in Deputy Sheriff Hood's presence. The incompetency of this evidence is apparent in light of the foregoing delineation of the evidence in relation thereto. Mr. Wilson did not know Scott Worley and could not swear positively that he was talking to Scott Worley over the telephone, hence his evidence was absolutely incompetent for lack of identity of the person to whom he was talking. 22 C.J.S., Criminal Law, § 421, p. 644, and Hildebrandt v. State, 22 Okla. Cr. 58, 209 P. 785. The evidence in regard to Mr. Hood and what he knew about the conversation was hearsay since it was relayed in the hotel room where he was supposed to have heard Wilson have the telephone conversation with Scott Worley. In view of the defendant's testimony to the effect that he was not engaged in the sale of whiskey but had the same for his own personal use and benefit the evidence of the telephone conversation related to a material matter and substantiated the state's case on the proposition that the defendant was actually engaged in the business of bootlegging. As to Officer Hood, the evidence is the rankest kind of hearsay and suspicion. In Smith v. State, 59 Okla. Cr. 312, 58 P. 2d 347, it was held:

"Where hearsay evidence has been received, which reasonably contributed to the verdict of guilty, the reception of such evidence will be grounds for reversal.

"A conviction based upon hearsay evidence, or upon suspicion, is not obtained by due process of law, and is contrary to the Constitution of this state, and also to the Constitution of the United States."

To the same effect see Hull v. State, 61 Okla. Cr. 12, 65 P. 2d 423; Brokhaus v. State, 11 Okla. Cr. 625, 150 P. 510; Hau v. State, 30 Okla. Cr. 24, 234 P. 649; Peavler v. State, 47 Okla. Cr. 395, 288 P. 610; Young v. State, 89 Okla. Cr. 395, 208 P. 2d 1141. In light of the foregoing evidence and authorities, we can reach but one conclusion, that is, that this case should be reversed and remanded for a new trial consistent with the principles herein announced.

POWELL, P. J., and JONES, J., concur.