**Roger Dale STAFFORD, Sr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–79–722.**

Court of Criminal Appeals of Oklahoma.

June 20, 1983.

Rehearing Denied July 26, 1983.

---

1206

Garvin A. Isaacs, Isaacs & Angel, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Chief, Appellate Crim. Div., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Roger Dale Stafford was convicted on six counts of Murder in the First Degree and sentenced to death.

On July 16, 1978, Roger Stafford, his wife, Verna Stafford, and his brother, Harold Stafford, drove from Tulsa to Oklahoma City to rob the Sirloin Stockade Restaurant. The trio waited in the restaurant parking lot until all the customers had left. At around 10:00 p.m. they exited their automobile and Roger Stafford knocked on the side door of the restaurant. The manager answered the door and was greeted by Roger and Harold Stafford pointing guns at him. They forced him to take them to the cash register and the office safe.

Inside the restaurant, the manager began taunting them, saying that he could not understand why people rob others instead of working for themselves. Roger Stafford hit the manager and demanded that he call his employees to the cash register. The manager complied with the demand.

Harold and Verna Stafford held the employees at gunpoint while the appellant and the manager emptied the office safe which contained about $1290.00. After they obtained the money, the employees were ordered inside the restaurant's walk-in freezer. The appellant then asked Harold Stafford to help him in the freezer. Harold

reminded the appellant that no one was to be hurt. The appellant retorted that "they are going to get what they deserve." He then shot the only black employee, and both men opened fire on the remaining employees. Verna Stafford testified that she heard a lot of gunfire and screaming.

Roger Stafford then told Verna that it was time for her to take part. He placed his gun in Verna's hand and helped her pull the trigger. All six Sirloin Stockade employees died as a result of the shootings.

## I

■ The appellant argues that 21 O.S. 1981, § 701.11 unconstitutionally shifts the burden of proof to the defendant by requiring him to present evidence in mitigation of the death penalty. Section 701.11 mandates that in order to impose a sentence of death the jury must unanimously find at least one aggravating circumstance beyond a reasonable doubt. Additionally, if the jury does find that an aggravating circumstance exists, it must determine whether the aggravating circumstance(s) is outweighed by the finding of one or more mitigating circumstances.

Section 701.11 clearly places the burden of proof on the State to prove beyond a reasonable doubt the existence of any aggravating circumstances. The defendant is merely required to come forward with evidence of any mitigating circumstances, if he wishes to do so. The mitigating circumstances which exist in any given case are peculiarly within the knowledge of the defendant. We hold that this statutory scheme does not offend the Eighth or the Fourteenth Amendments of the United States Constitution. *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982). We further find that this procedure was implicitly upheld by the U.S. Supreme Court in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

## II

■ Stafford also contends that he should have been granted a preliminary hearing on the aggravating circumstances

the State intended to prove. We addressed this issue in *Johnson v. State,* 665 P.2d 815 (Okl.Cr.1983), and *Brewer v. State,* 650 P.2d 54 (Okl.Cr.1982), where we rejected the argument that a preliminary hearing is required on the bill of particulars in a capital case. We find these cases to be dispositive of the issue at bar.

## III

■ Appellant next contends that he was denied the effective assistance of counsel. This case was tried prior to *Johnson v. State,* 620 P.2d 1311 (Okl.Cr.1980), wherein we prospectively adopted the "reasonably competent assistance of counsel" test. Accordingly, appellant must show that counsel's performance was so ineffective that the trial was reduced to a farce or mockery of justice, or was shocking to the conscience of this Court, or that counsel's services were only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation. The burden is a heavy one, and is not satisfied by simply pointing out possible errors in counsel's judgment, or lack of success in the defense. See *Phillips v. State,* 650 P.2d 876 (Okl.Cr.1982).

A number of alleged instances of attorney ineffectiveness are set out in appellant's briefs. He contends that the motion for new trial was "feeble", reflecting incompetence. He appears to complain of the omission from that pleading of many of the allegations of error now urged on appeal.

■ The office of the motion for new trial is to put the trial judge on notice of alleged errors so that he or she can take curative action, and specific statement of the allegations of error in the motion for new trial is necessary in order to preserve such error for appellate review. See *McDuffie v. State,* 651 P.2d 1055 (Okl.Cr. 1982). We have fully reviewed the errors alleged on appeal, and we find that none are sufficient to warrant reversal or modification. The omission of nonmeritorious arguments from the motion for new trial does not evidence attorney incompetence. See

*People v. Tedder,* 83 Ill.App.3d 874, 39 Ill. Dec. 53, 404 N.E.2d 437 (1980).

■ Appellant next contends that trial counsel permitted television cameras in the courtroom to appellant's detriment. However, it is clear that appellant personally approved the presence of such equipment after being fully advised of his rights in open court by the trial judge. [Transcript of Hearing as to Televised Proceedings, 3–6.] This is consistent with his prior action at an earlier stage of the proceedings while represented by other counsel. [Appearance Docket, O.R. 364.]

There is no indication that Canon 3(A)(7), 5 O.S.1981, Ch. 1, App. 4, which limits the number and kind of cameras and microphones and enjoins the disruptive use of such equipment, was not strictly complied with in this matter. Finally, the jury was sequestered, and there is no showing that they were exposed to the resulting news coverage.

■ Appellant further contends that trial counsel unethically solicited the representation, improperly contracted for publication rights in the case, and breached a promise to provide all the funds necessary for the defense. These contentions rest on alleged facts wholly outside the record. We denied a motion to remand for an evidentiary hearing on similar allegations. *Stafford v. State,* F–79–722 and F–80–256, November 4, 1981.

In order to prove the necessary facts, appellant has submitted with his brief the unverified affidavit of present counsel relating the hearsay statements of named and unnamed third persons, and a purported but unauthenticated page from defense trial notes in the case. We deem it improper to permit the litigation of such factual issues by ex parte affidavits and attachments on appeal. Such procedure has been condemned in other jurisdictions. See *United States v. Thompson,* 475 F.2d 931 (D.C.Cir. 1973); *State v. Gross,* 221 Kan. 98, 558 P.2d 665 (1976); *Pollan v. State,* 612 S.W.2d 594 (Tex.Cr.App.1981); *People v. Penn,* 70 Mich. App. 638, 247 N.W.2d 575 (1976).

■ However, we are of the opinion, from a careful reading of the entire transcript and original record, that there is a sufficient record before us to resolve the appellant's allegation that he was prejudiced by the existence of a contract between himself and trial counsel, J. Malone Brewer, because Brewer failed to uphold his end of the bargain, to wit: the investigation and presentation of a defense at trial. We have reviewed each of the alleged flaws in counsel's performance in light of the alleged conflict of interest. The trial transcript amply demonstrates that Stafford was neither prejudiced nor otherwise adversely affected by the possible existence or breach of any contract with his trial counsel. See *United States v. Hearst,* 638 F.2d 1190 (9th Cir.1980), cert. den. 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325. Even if there was proof of the existence of a contract, it would merit his cause nothing. An ethical violation, standing alone, does not constitute ineffective assistance of counsel.

■ Appellant urges that trial counsel failed to investigate appellant's psychiatric background since he did not offer such evidence in mitigation during the sentencing hearing. This argument supposes the existence of favorable psychiatric testimony. The record does not support the supposition.

Appellant was delivered to Eastern State Hospital in Vinita, Oklahoma, on March 27, 1979, for various treatments, including "complete psychological profile" and "complete psychiatric examination and evaluation." He was to be held up to sixty days, but was discharged a short time later on April 18, 1979. Prior to trial, trial counsel moved for the production of the psychological evaluation expressing the belief that it would be exculpatory. Although the disposition of this request is not clear, a communication from the prosecutor's office to defense counsel dated October 4, 1979, indicates that all requested reports were delivered to trial counsel.

Appellant has the burden of proving his ineffectiveness of counsel argument. *Phillips v. State,* supra. The crucial psychologi-

cal evaluation is not in the record on appeal, and we may not assume that it was favorable to the defense. Appellant's suggestion that he was operated on for a brain tumor at the age of twelve, and that he has been in and out of mental institutions, is wholly unsupported by the record.

■ Appellant next urges that trial counsel failed to interview him before trial. This is based on an isolated portion of appellant's testimony at trial.[1] Viewed with other relevant testimony, it appears that counsel did in fact confer with appellant and that appellant merely meant to convey that counsel had not coached his testimony or told him what to say.[2]

■ Appellant further urges that counsel failed to offer any evidence during the second stage sentencing hearing, and that the jury therefore had no basis for deciding punishment. However, both the State and the defense opted to rely on the evidence submitted in the first stage guilt proceeding, neither side offering additional evidence in the second stage. [Tr. 1176 and 1177.] The jury was instructed that it could consider in the sentencing stage any evidence admitted throughout the trial by either side. Appellant does not indicate what additional evidence could or should have been offered in the sentencing hear-

ing. See *Collins v. State,* 271 Ark. 825, 611 S.W.2d 182 (1981).

Appellant next argues that trial counsel called a former cellmate to the witness stand without first obtaining a sworn statement from the witness. On the morning of the fifth day of trial, the State produced a second former cellmate who testified concerning incriminating statements made by appellant. In order to blunt the effect of this testimony, the witness in question was called to the stand that afternoon. Appellant later testified that the witness had written him offering to testify for the defense and that he gave the witness' name to trial counsel. As late as 12:30 P.M. the day in question, the witness is alleged to have told counsel that he would testify favorably to the defense. However, the witness actually gave testimony damaging to appellant.

■ In hindsight, appellant's suggestion on appeal appears flawless. However, hindsight is not the proper measure of the adequacy of legal representation. See *Walker v. State,* 550 P.2d 1339 (Okl.Cr. 1976). Allowing counsel a necessary measure of discretion in judging the urgency for rebutting the prosecution's witness and given the witness' apparent recent affirmation of the tenor of his intended testimony,

---

1. The prosecutor cross-examined appellant at Tr. 986:

Q. All right. Now, you said something yesterday that I may have misunderstood.

Did you tell us that you had never talked to Mr. Brewer about your testimony in this case?

A. That's right.

Q. Never at any time in preparation for this rather serious case, did you ever talk to him about what your testimony would be?

A. No, sir.

Q. Did you ever talk to anybody about it? Any of the defense lawyers?

A. No, sir.

Q. So they didn't know until you went on the stand right now or yesterday what you were going to say about where you were and what you had done?

A. Right.

2. Defense counsel elicited the following from appellant on direct and re-direct examination at Tr. 939–940 and 1000:

Q. At any point in time through this trial, have I told you what to say?

A. No.

Q. At any time during this trial, have we rehearsed what you're going to say?

A. Absolutely not.

Q. As a matter of fact, at any period of time, did we dwell upon your testimony at great lengths?

A. No, not at all.

Q. You're testifying solely from your memory, best you know?

A. The best as I can.

\* \* \* \* \* \*

BY MR. BREWER:

Q. All right. Now, Roger, when it was brought up that had you discussed your testimony as you testified before with defense counsel, what are you saying?

That you and I've never even talked about this case? Or I did not plan it for you?

A. I did not plan for you.

Q. We have discussed it though, have we not?

A. Oh, yeah, to a degree, yeah.

counsel's action was, at most an error of judgment within the meaning of *Phillips v. State,* supra.

Appellant finally argues that counsel erred in failing to timely designate the voir dire proceedings for inclusion in the record on appeal. The original designation of record expressly excluded the voir dire proceedings. A later amended designation included voir dire, but there is no indication that it was ever served upon the court reporter. It now appears that the reporter's notes of voir dire are unavailable.

 Whether or not voir dire and similar proceedings should be recorded is a matter of trial tactics, and a decision not to have such proceedings recorded is not ineffective assistance absent supplementation of the record by affidavit or pleading, showing alleged prejudicial occurrences. See *Webb v. State,* 612 P.2d 285 (Okl.Cr. 1980), applying *Baker v. State,* 593 P.2d 100 (Okl.Cr.1978). See also *Johnson v. State,* supra. We find that the same rule should govern counsel's decision whether to designate for transcription voir dire and other proceedings.

 In the case at bar, there is no basis for finding that counsel should have designated the voir dire proceedings. We note appellant's suggestion that jurors might have been excluded for cause at voir dire in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). This suggestion is refuted by defense argument at trial that the judge improperly applied the majority opinion in *Witherspoon* at voir dire, rather than the specially concurring opinion in that case. [Tr. 10–14; O.R. 234–236.] It was alleged at trial that eight jurors were excused for cause under the majority opinion in *Witherspoon,* and the trial judge in Stafford's trial remarked that he "was amazed at the very low, small number who went off for that reason." [Tr. 14.]

 In conclusion, trial counsel filed numerous pre-trial motions on appellant's behalf, interposed frequent objections during the prosecution's case, and vigorously cross-examined the State's witnesses. He placed appellant on the stand in an effort to establish an alibi defense. Though not offering evidence in the sentencing hearing, counsel argued mitigating circumstances to the jury and made an impassioned plea for appellant's life. The case against appellant was very formidable. We are unable to find on the record before this Court that appellant has sustained his burden of proving ineffective assistance of counsel.

## IV

 Stafford argues that the trial court erred in allowing the introduction of several color photographs in evidence. The six photographs in question depict five of the Sirloin Stockade employees shot to death in the freezer. The admissibility of photographs lies within the sound discretion of the trial judge. *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980). At bar, the trial judge found that the probative value of the photographs outweighed their prejudicial effect. We do not find fault with this ruling. The photographs were probative to illustrate the medical examiner's testimony. They also enabled the jury to view the manner in which the victims were killed and, thereby, corroborated the testimony of Verna Stafford. See *Chaney v. State,* 612 P.2d 269, 275 (Okl.Cr.1980).

## V

 Stafford advances that the trial court erred by allowing Verna Stafford to testify. He contends that Verna Stafford's testimony violated the husband and wife privilege under 12 O.S.1981, § 2504. Section 2504 provides in part:

A. A communication is confidential for purposes of this section if it is made privately by any person to his spouse and is not intended for disclosure to any other person.

B. An accused in a criminal proceeding has a privilege to prevent his spouse from testifying as to any confidential communication between the accused and the spouse.

Verna Stafford testified in regard to the facts and circumstances surrounding the Sirloin Stockade murders. She stated that her husband, Roger Stafford, planned the robbery and subsequently caused the death of several of the employees. Our initial inquiry is whether Verna Stafford's testimony breached any confidential communications between her and Roger Stafford.

In *Lavicky v. State*, 632 P.2d 1234, 1236 (Okl.Cr.1981), we stated that "[c]onfidential communications between husband and wife are those made when they're alone, or are those expressly made confidential, or are of a confidential nature induced by the marital relationship, the disclosure of which are calculated to disturb the marital relationship." In this case, the trial judge specifically limited Verna Stafford's testimony to her personal observations and conversations with her husband which were made in the presence of third persons. Clearly, the conversations between Verna and Roger Stafford in the presence of a third party were not of a confidential nature as is required under 12 O.S.1981, § 2504(A).

The evidence at trial sufficiently established that Harold Stafford was present during most of the conversations between Verna and Roger Stafford. The trial judge specifically excluded all statements made privately between Verna and Roger Stafford, therefore, we conclude that Verna's testimony did not violate the husband-wife privilege, as protected under Section 2504(B).

In a related argument, Stafford contends that the trial court erred in admitting the testimony of Linda Lewis. Ms. Lewis overheard a conversation between Roger and Verna Stafford. Stafford argues that the conversation was intended to be confidential and therefore protected under Section 2504, the husband-wife privilege.

Ms. Lewis testified that she overheard a conversation between Roger and Verna in the parking lot outside her Tulsa motel window after the homicides. She related to the jury the following events:

Ms. Lewis: I was in my room, sir. I heard the commotion. I went to my win-dow. I looked out, and I seen who it was. And, you know, I seen him hit her, and I opened my door—

Q. All right, excuse me. Just tell us, please, what you heard and saw? In the first place, are you—who was it that you saw?

A. I saw Roger and Verna.

Q. All right. Tell us what you first saw, please?

A. I saw Roger slap Verna, and she said, "I'm calling the police." And Roger said, "Go ahead. You would be in as much trouble as I would".

And she said, "I didn't kill them Roger. You did." Roger said, "You were there, and you were with us".

And I heard something else, and then Verna said, "No".

The appellant, citing *Seigler v. State*, 54 Okl.Cr. 141, 15 P.2d 1048 (1932), argues that where a conversation between husband and wife is intended to be confidential and the parties are unaware of an eavesdropper, the conversation maintains its cloak of privilege. A plain reading of *Seigler* makes obvious the inaccuracy of the appellant's statement. In *Seigler*, this Court stated that "[t]he rule is that third parties may testify to communications had between husband and wife, overheard by such third persons." 54 Okl.Cr. at 143, 15 P.2d at 1048. We hold that irrespective of whether communications between husband and wife are intended to be confidential, third persons may testify as to conversations overheard, whether accidentally or by design. See *Hilderbrandt v. State*, 22 Okl.Cr. 58, 209 P. 785 (1922). Accordingly, we find that Ms. Lewis' testimony was properly admitted into evidence.

### VI

Appellant contends that the trial court erred in denying an application for change of venue. Resolution of this issue depends upon whether appellant established that the inhabitants of the county had such fixed opinions as to his guilt that he could not receive a fair trial by an impartial jury.

*Mooney v. State,* 273 P.2d 768 (Okl.Cr.1954). See also *Thomsen v. State,* 582 P.2d 829 (Okl.Cr.1978).

■ According to the transcript of the hearing on the application, appellant introduced nine affidavits, some newspaper clippings and the testimony of three Oklahoma City area television newspersons in support of change of venue. The affiants, all residents of Oklahoma and Canadian counties, stated that they had formed opinions as to appellant's guilt or innocence and expressed the belief that he could not obtain a fair and impartial jury in light of the atmosphere prevailing in central Oklahoma. In this regard, appellant's trial counsel advised the court that only nine of one hundred fifty-one persons interviewed agreed to sign affidavits, the remainder expressing one of three viewpoints: they did not want to become involved; they believed that appellant should be tried and "hung" in Oklahoma County; or, they had no opinion in the matter.

The newspersons testified that the case had received extensive coverage, but that references to appellant were always prefaced by such qualifying language as "accused", "alleged" and "suspected." The newspaper clippings concededly did not represent a "complete and concise" coverage of the reports published in the county.

The transcript further reveals that the State offered fifty affidavits in opposition to change of venue. The affiants, all residents of Oklahoma County, stated that the media coverage of the case had been fair, that an unbiased jury could be selected in Oklahoma County, and that they had formed no opinions as to appellant's guilt or innocence.

Except for five of the defense affidavits, the newspaper clippings and the prosecution and defense affidavits are not in the record on appeal. On the record before us, we find no abuse of discretion in the denial of the application.

■ Appellant also contends that the trial court erred in denying a motion for individual voir dire of the prospective jur-

ors. However, since the transcript of voir dire is not in the record on appeal, we must assume that the judge's rulings were correct. *Henderson v. State,* 385 P.2d 930 (Okl.Cr.1963). For all that appears, the motion was never called to the attention of the court, see generally *Smith v. State,* 644 P.2d 106 (Okl.Cr.1982); or the circumstances brought out at voir dire warranted denial of the motion in the trial court's discretion, *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980); or, individual voir dire was in fact conducted. This argument is not properly before this Court.

## VII

■ It is further advanced that the State failed to produce all exculpatory evidence. Specifically Stafford claims that the State deliberately withheld a written statement given by Verna Stafford on March 8, 1979. In the initial pages of the 166 page statement, Verna denied any involvement in the Sirloin Stockade murders. However, as this interview wore on, Verna admitted her involvement in the Stockade murders and implicated Roger. The appellant argues that the rule set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), mandates a reversal of his conviction. We disagree.

In *Brady,* the Supreme Court ruled that the prosecution's suppression of exculpatory evidence where there is a specific request, "violates due process where the evidence is material either to guilt or punishment. . . ." 373 U.S. at 87, 83 S.Ct. at 1196–97. See also *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) and *Hall v. State,* 650 P.2d 893 (Okl.Cr.1982).

In this case, the record is unclear as to whether defense counsel received a copy of Verna Stafford's statement taken on March 8, 1979. Irrespective of whether the defense was provided a copy of the statement, we find that the appellant's due process rights were not violated. During the direct examination of Verna Stafford the prosecution brought out the fact that in her first statement to the police she denied involvement in the Stockade murders. The prose-

cution questioned Verna Stafford as follows:

Q In regard to that first questioning, Mrs. Stafford, what did you tell the officers?

A I told them that I did not have the gun, and that I didn't know—and I didn't help to plan the robbery, and I just came down here.

Q Excuse me, Mrs. Stafford, I'm talking about the very first time that you were questioned now. What did you tell them about whether you had been to Oklahoma City or not?

A The very first statement, I told them that I hadn't ever been here.

Q What did you tell them about Roger and Harold or their being involved in it?

A I told them that none of us had come down here.

Q All right. Did you subsequently change that during the time of that statement?

A Yes, sir.

MR. BREWER: If the Court please, we're going to renew our objections as to hearsay at this point.

Therefore, we find that even if the prosecution did fail to provide the defense with the March 8th statement, it did not affect the outcome of the trial since the prosecution presented this evidence to the jury for their consideration.

### VIII

■ Stafford advances that because he was not taken before a magistrate until two days after his arrest, his statements given in the interim should have been suppressed. The record reveals that while Stafford was in custody he was informed that he was being held on a murder complaint; he was read his *Miranda* rights; he was questioned in regard to the Stockade slayings; and, he gave a statement prior to being taken before a magistrate for the initial arraignment.

In *Stidham v. State,* 507 P.2d 1312 (Okl. Cr.1973), this Court, in addressing an identical argument, stated that the burden is on the accused to establish prejudice by reason of the delay in taking him before a magistrate, in addition to the delay itself. In the case presently before this Court, we find that the appellant has wholly failed to show any prejudice resulting from the two day delay. We find the appellant's argument to be without foundation.

### IX

The appellant further argues that the testimony of Verna Stafford regarding statements made by Harold Stafford and the manager of the Sirloin Stockade were inadmissible hearsay. He contends that the introduction of these hearsay statements violated his Sixth Amendment right to confront witnesses because he was denied an opportunity to cross examine the persons who allegedly made the statements.

■ At trial, Verna Stafford testified that "Harold said he would go ahead and get the guns ready . . . ." We find that under 12 O.S.1981, § 2801(4)(b)(5) this testimony does not constitute hearsay. Section 2801(4)(b)(5) provides that a statement is not hearsay if made "by a coconspirator of a party during the course and in furtherance of the conspiracy." At bar, there was ample evidence that Roger Stafford and Harold Stafford had entered into a conspiracy to rob the Sirloin Stockade. Under Section 2801(4)(b)(5) Harold Stafford's statements made in the course of the conspiracy and in furtherance of the conspiracy were admissible against his coconspirator, Roger Stafford.

■ The appellant also objects on hearsay grounds that it was improper for Verna Stafford to testify about statements allegedly made by the deceased manager of the Sirloin Stockade. When asked what the manager told Roger Stafford, Verna stated, "he said that he couldn't understand why people had to take other people's money, why they couldn't work for themselves." The resolution as to whether this statement constitutes hearsay requires an understanding of the statutory definition of hearsay.

Title 12 O.S.1981, § 2801(3) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted..." The crucial determination in this case, is whether the statement objected to was offered to prove the truth of the matter asserted. Here, we find that the out-of-court statement was not offered for its truth. This statement is relevant solely because it was made, it does not matter whether the assertion is true. The reliability of the statement is not dependent upon the veracity of a declarant unavailable for cross-examination. Therefore, we find that the statement in question does not fall within the definition of hearsay. *Goodwin v. State,* 625 P.2d 1262, 1265 (Okl.Cr.1981).

### X

■ We find that the death sentences were not imposed under the influence of passion, prejudice or any other arbitrary factor. 21 O.S.1981 § 701.13(C)(1). Although the victims were employed and presumably resided in the Oklahoma County area and high public feeling could be expected, the transcript does not reflect any bias or prejudice. *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980). Moreover, the evidence against appellant was overwhelming, and in itself provided ample support for the verdict. *Ake v. State,* 663 P.2d 1, 54 O.B.A.J. 996 (Okl.Cr.1983).

■ We further find that the evidence supports the jury's findings of four statutory aggravating circumstances. 21 O.S.1981, § 701.13(C)(2). First, the evidence was sufficient to show that appellant knowingly created a great risk of death to more than one person. 21 O.S.1981, § 701.12(2). Appellant crowded the six victims into a meat freezer the size of a closet and, with the aid of Harold Stafford, opened fire at close range. One of the victims died of a bullet wound to the neck, the remainder suffering fatal head wounds.

■ Second, the evidence was sufficient to support a finding that the murders were especially heinous, atrocious, or cruel. 21 O.S.1981, § 701.12(4). "Heinous" is defined as "extremely wicked or shockingly evil"; "atrocious" means "outrageously wicked and vile"; and "cruel" imports a design "to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others." *Boutwell v. State,* 659 P.2d 322, 329 (Okl.Cr.1983), quoting with approval *State v. Dixon,* 283 So.2d 1 (Fla. 1973).

The victims, ranging in age from 16 to 56, anxiously inquired concerning their safety several times during the course of the robbery. They were repeatedly assured that they would not be harmed, even as they were forced into the freezer and ordered to sit on the floor. The horrible truth must have become apparent the instant appellant pointed his gun and shot, in turn, Isaac Freeman and the manager, Louis Zacarias. According to Verna Stafford, there was "a lot of screaming." Several of the victims were shot from three to five times. Appellant later said that it was "like shooting a balloon in a bag of water", and "like shooting a fence post."

The evidence amply supports this aggravating circumstance. *Odum v. State,* 651 P.2d 703 (Okl.Cr.1982), is distinguishable due to the absence in that case of "evidence of any physical or mental suffering whatsoever." 651 P.2d at 707.

■ Third, the evidence supports the finding that the murders were committed for the purpose of avoiding or preventing lawful arrest or prosecution. 21 O.S.1981, § 701.12(5). As the restaurant manager entered the freezer, he said that the robbers would do no more than walk down the road before being caught, and that he, the manager, would see to it that their "knees would be run into the ground" so as to spare himself any similar ordeal in the future. Thereafter, contrary to plan, appellant pressured Harold Stafford into helping shoot the witnesses.

■ Finally, the evidence clearly suggests that there exists a probability that appellant would commit criminal acts of violence that would constitute a continuing

threat to society. 21 O.S.1981, § 701.12(7). There was testimony that, prior to his arrest, appellant threatened the life of a witness, Rose Anna Marie Collins, to ensure her silence. On the other hand, we observe that there was no evidence at trial of prior criminal acts of violence by appellant. However, "the circumstances of the offense may furnish extremely probative evidence of the probability of future acts of violence." *Russell v. State,* 598 S.W.2d 238, 254 (Tex.Cr.App.1980), cert. den. 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300, construing Texas Code Criminal Procedure, Article 37.071, which is similar to § 701.12(7).

In this case, appellant and his confederates carefully planned the armed robbery. The savage, execution-style killing of the restaurant employees, coupled with appellant's shockingly calloused attitude and his later threat against witness, Collins, supports the jury finding.

 Finally, we find that the death sentences were not excessive or disproportionate compared with the penalty imposed in similar cases and considering both the crime and the defendant. 21 O.S.1981, § 701.-13(C)(3). We have compared this case with several prior decisions, including those in which the death sentence was affirmed,[3] and those reversed or modified to life imprisonment.[4] We have especially considered those cases involving murder in the course of robbery. See *Johnson v. State,* supra, Note 5; *Ake v. State,* supra, Note 4; *Hatch v. State,* supra, Note 5; *Smith v. State,* supra, Note 4; *Boutwell v. State,* supra, Note 5; *Irvin v. State,* supra, Note 5; and *Hays v. State,* supra, Note 4.

Finding no error warranting reversal or modification, the judgments and sentences are AFFIRMED.

BUSSEY, P.J., and BRETT, J., concur.

---

3. *Ake v. State,* 663 P.2d 1, 54 O.B.A.J. 996 (Okl.Cr.1983); *Smith v. State,* 659 P.2d 330 (Okl.Cr.1983); *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982); *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1982); *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980); *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980); and *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980), remanded for resentencing, *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).

4. *Hatch v. State,* 662 P.2d 1377, 54 O.B.A.J. 1003 (Okl.Cr.1983); *Jones v. State,* 660 P.2d 634, 54 O.B.A.J. 661 (Okl.Cr.1983); *Johnson v.*

*State,* 662 P.2d 687, 53 O.B.A.J. 730, rehearing granted and opinion amended, 54 O.B.A.J. 398 (Okl.Cr.1983); *Driskell v. State,* 659 P.2d 343 (Okl.Cr.1983); *Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983); *Munn v. State,* 658 P.2d 482, 54 O.B.A.J. 109 (Okl.Cr.1983); *Odum v. State,* 651 P.2d 703 (Okl.Cr.1982); *Hall v. State,* 650 P.2d 893 (Okl.Cr.1982); *Brewer v. State,* 650 P.2d 54 (Okl.Cr.1982); *Burrows v. State,* 640 P.2d 533 (Okl.Cr.1982); *Franks v. State,* 636 P.2d 361 (Okl.Cr.1981); *Irvin v. State,* 617 P.2d 588 (Okl. Cr.1980).